DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Respondent,<br><br>vs.<br><br>NATHANIEL DIAZ PUNZALAN,<br><br>    Defendant-Petitioner. | CRIMINAL CASE NO. 07-00075<br>CIVIL CASE NO. 11-00039<br><br>**ORDER AND OPINION RE:**<br>**§ 2255 MOTION** |

Before the court is Defendant-Petitioner Nathaniel Diaz Punzalan's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 ("the Motion" or "§ 2255 Motion"). ECF No. 162.[1] After reviewing the parties' briefs, and relevant cases and statutes, the court hereby **DENIES** the Motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2007, Nathaniel Diaz Punzalan ("Petitioner") was indicted for two counts of Possession of a Firearm by a Felon and two counts of Possession of Ammunition by a Felon arising from events which occurred on two separate occasions on January 4, 2006 and April 11, 2007. *See* ECF No. 1. A superseding indictment was filed on July 16, 2008 with the same charged offenses. *See* ECF No. 76. On August 14, 2008, Petitioner was found guilty of one count of Possession of a Firearm by a Felon. *See* ECF No. 116. On May 5, 2009, Petitioner was

---

[1] For ease of reference, all ECF numbers referred to herein correspond to Criminal Case No. 07-00075 unless otherwise noted.

sentenced to 120 months imprisonment and three years of supervised release. *See* Judgment, ECF No. 138.

On May 8, 2009, Petitioner appealed his conviction to the Ninth Circuit Court of Appeals, which affirmed the conviction on January 19, 2011. *See* ECF Nos. 142, 158; *United States v. Punzalan*, 409 F. App'x 173 (9th Cir. 2011). Petitioner then filed a petition for writ of certiorari to the Supreme Court of the United States, which was denied on June 6, 2011. *Punzalan v. United States*, 131 S. Ct. 2981 (2011).

On December 20, 2011, Petitioner filed the instant 2255 Motion. *See* ECF No. 162. Therein, Petitioner moves the court to set this matter for an evidentiary hearing, appoint him counsel, and vacate his conviction and sentence. The Government filed its Answer on July 18, 2012. *See* ECF No. 170. Petitioner filed a Supplemental Memorandum in Support of the Motion on September 4, 2012, and filed his Reply on January 21, 2014. *See* ECF Nos. 171, 179.

## II. **DISCUSSION**

A prisoner in custody may bring a motion to attack his sentence under 28 U.S.C. § 2255 by demonstrating "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Petitioner claims two grounds upon which his sentence is invalid: (1) evidence used at trial was the product of unlawful entry and search; and (2) ineffective assistance of counsel. Pet'r's Mot. at 5–6, ECF No. 162.

### A. PROCEDURAL DEFAULT

Before considering the merits of Petitioner's claims, the court must first determine whether they have been waived by Petitioner's failure to raise these errors on appeal. The Ninth

Circuit has "consistently held that a § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding." *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996) (citing *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994) and *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990)). However, the Ninth Circuit has left room for "the possibility that certain errors are remediable by way of § 2255 because they were not discoverable in time for direct appeal." *Schlesinger*, 49 F.3d at 486.

Defendants may raise constitutional sentencing errors "for the first time in a § 2255 motion if they show both cause for their failure to make the objection earlier and prejudice from that failure." *McMullen*, 98 F.3d at 1157 (citing *Evenstad v. United States*, 978 F.2d 1154, 1158 (9th Cir. 1992)); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982) (general rule that claims not raised on direct appeal may not be raised on collateral review unless petitioner shows cause and prejudice). The Supreme Court specifically has held "that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). In fact, the Court noted that such claims "ordinarily will be litigated in the first instance in the district court." *Id*. at 504–05.

### B. UNLAWFUL ENTRY AND SEARCH

Petitioner's first claim is that his conviction was based upon evidence that was the product of unlawful entry and search in violation of the Fourth Amendment. Pet'r's Mot. at 5, ECF No. 162. However, the Ninth Circuit has held that Fourth Amendment violations cannot be raised on collateral review if the Government provided Petitioner with "a full and fair opportunity to raise this issue on direct appeal." *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980) (citing *Tisnado v. United States*, 547 F.2d 452, 456 (9th Cir. 1976) and *Stone v.*

1 *Powell*, 428 U.S. 465, 494 (1976)). The court noted that "[i]f the provided opportunity has been squandered due to defense counsel's incompetence or misconduct, a convict's only option on collateral review is a Sixth Amendment claim based on inadequate assistance of counsel." *Id*. (citing *Canary v. Bland*, 583 F.2d 887, 890 (6th Cir. 1978)). As Petitioner was provided a full and fair opportunity to litigate this claim, he cannot raise it on collateral review. However, as Petitioner has enveloped the Fourth Amendment claim within his ineffective assistance of counsel claim, the court will address both issues concurrently in the following subsection.

**C. INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner claims he was provided ineffective assistance of counsel in violation of his Sixth Amendment right to counsel. To succeed on such a claim, Petitioner must establish: (1) that counsel's conduct was deficient, and (2) that such deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 693 (1986). To demonstrate deficiency by counsel, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Then Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Petitioner argues that he suffered ineffective assistance because defense counsel principally failed to: (1) investigate and call witnesses regarding the alleged unlawful entry and search of the residence wherein Petitioner was arrested; (2) file any motions regarding suppression of evidence which was the product of the alleged unlawful entry and search; (3) challenge the joinder of Counts I and II, arising from events taking place on January 4, 2006, with Counts III and IV, arising from events taking place on April 11, 2007; and (4) place the

Government's case to reasonable adversarial testing by stipulating to essential elements of the charged crime. Pet'r's Mem. at 12–13, ECF No. 162.

### 1. Failure to Investigate and Call Witnesses Regarding Alleged Unlawful Entry and Search

Petitioner argues that counsel did not conduct the necessary pretrial investigations, even after discussing the matter with Petitioner, which would have revealed the following: (1) entry into the residence to effectuate his arrest was by force, (2) the subsequent "safety sweep" exceeded the legitimate scope of inspection for protective measures, and (3) the search of the residence and vehicle was conducted without voluntary and valid consent. Pet'r's Mem. at 12, ECF No. 162. Petitioner further asserts that counsel failed to call as witnesses his uncle, brother, and mother, whose testimony would have corroborated the above. Pet'r's Reply at 8–9, ECF No. 179.

In *Strickland*, the Supreme Court stated that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 690–91. The Supreme Court subsequently elaborated that "[i]n assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

### a. Unlawful Entry

Petitioner argues that the Marshals executed a forcible entry into the Salas Street residence,[2] where he was arrested, without a "knock and announce." He also contends that the

---

[2] In the Reply, Petitioner clarifies that the Salas Street residence was owned by his uncle, Joe Punzalan. Pet'r's Reply at 8, ECF No. 179. Petitioner asserts that he and his brother, Jake Punzalan, were guests in his uncle's

Marshals did not have a search warrant and secured an involuntary consent from his brother to enter the residence.

The Supreme Court has held that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). "Because an arrest warrant authorizes the police to deprive a person of liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." *Steagold v. United States*, 451 U.S. 204, 214 n.7 (1981). Similarly, Petitioner's "Fourth Amendment rights would not have been violated when the [Marshals] entered a third-party residence with an arrest warrant for [Petitioner], but *without a search warrant or consent*, if the [Marshals] had 'reason to believe' that he was present." *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002) (emphasis added) (citing *United States v. Underwood*, 717 F.2d 482 (9th Cir. 1983) (en banc)).

The Ninth Circuit has held that the "reason to believe" standard "entail[s] the same protection and reasonableness inherent in probable cause." *Gorman*, 314 F.3d at 1115. The Ninth Circuit also has held that "[a] common-sense analysis of the 'totality of the circumstances' is therefore crucial in deciding whether an officer has a reason to believe a suspect is home." *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007). In *Diaz*, the Ninth Circuit held the agents had reason to believe the defendant was home because the defendant had told agents he was usually home during the day, the agents knew the defendant worked at home as a mechanic, and the agents had visited the defendant at home several times before, which all suggested that the defendant would be home during the day when the agents came to arrest him. *Id*.

---

residence at the time of the arrest. *Id*.

Here, Petitioner asserts that the "Marshals acted on second hand information, which in turn, was based on an 'anonymous' tip.[3] There never existed any reasonable or probable cause to enter the residence on Salas Street." Pet'r's Mem. at 19. However, the record indicates otherwise. The issue here is "what constitutes a reason to believe a suspect is home, such that officers *may enter his home* to arrest him." *Diaz*, 491 F.3d at 1077 (emphasis added). Taking Petitioner's assertions as true, although the Marshals acted on second-hand information in *going to* the residence, they did not *enter* the residence until they had sufficient reason to believe that Petitioner was present. Prior to entering, the Marshals knocked on the door and asked Petitioner's brother, who answered the door, whether Petitioner was in the residence. He answered in the affirmative. *See* Trial Tr. 289:22–290:7, 307:10–23, Aug. 13, 2008, ECF No. 153-2. Only after the Marshals confirmed Petitioner's general location within the residence and that no one else was present, and requested that Petitioner's brother come out of the residence for his safety, did the Marshals enter the residence. *Id*. Based on the foregoing, the Marshals had reason to believe that Petitioner was present at the Salas Street residence when they effectuated the arrest warrant. Thus, even assuming that Petitioner's brother did not give valid consent, the entry into the residence was lawful.

### b. Unlawful Search

Petitioner argues that the Marshals' search of the entire residence, yard, and Jeep Cherokee far exceeded the need to secure the arrest scene. Further, Petitioner asserts that the Marshals unlocked and searched the vehicle prior to allegedly talking to a person over the telephone for consent to search said vehicle. Pet'r's Mem. at 19, ECF No. 162.

---

[3] Marshal Roland Okada testified that on the morning of April 11, 2007, the day Petitioner was arrested, he received a call from a probation officer. The probation officer provided Marshal Okada with the information that Petitioner was sleeping at the Salas Street residence and that he was in possession of firearms. Marshal Okada did not testify regarding how the probation officer received the information. Further, defense counsel objected to the testimony based on hearsay, which was sustained by the court. Trial Tr. 286:17–287:1, Aug. 13, 2008, ECF No. 153-2.

### i. Bag

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). In the Ninth Circuit, determining the validity of a search incident to arrest is a two-fold inquiry: (1) was the searched item within the arrestee's immediate control when he was arrested; and (2) did events occurring after the arrest but before the search make the search unreasonable. *See United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010). "Containers found within that area [of immediate control] may also be searched contemporaneously with the arrest." *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983) (citations omitted).

In *United States v. Andersson*, agents entered a hotel room and arrested the defendant, who was standing next to a bed upon which lay two suitcases. 813 F.2d 1450, 1455 (9th Cir. 1987). One was open and contained cocaine while the second was closed. After arresting the defendant, the agents searched the second suitcase and found cocaine. In finding that the search of the second suitcase was proper, the Ninth Circuit held that "the agents could search both [the defendant] and the immediate area, including containers, as a search incident to arrest, as long as the search of the suitcase occurred at about the same time as the arrest." *Id*. at 1456.

In *United States v. Hudson*, the defendant was arrested in his bedroom and the officers observed a rifle case near his feet. 100 F.3d 1409, 1420 (9th Cir. 1996). The defendant was removed from the bedroom and approximately three minutes later, officers returned to the bedroom to search the rifle case. The Ninth Circuit held that the search fell within the contours of a search incident to arrest. *Id*.

Here, the record shows that when the Marshals entered the residence, they found Petitioner asleep on the floor of a small bedroom. Trial Tr. 290:22–291:1–11, Aug. 13, 2008, ECF No. 153-2. When the Marshals approached Petitioner to effectuate the arrest in the

bedroom, there was a bag right beside Petitioner and within arm's reach. *Id*. at 292:13–16, 308:1–11. Either simultaneously while Petitioner was being handcuffed or immediately after he was handcuffed, a marshal searched the bedroom and/or floor area. *Id*. at 299:12–14. Inside the bag laying beside Petitioner, the Marshals discovered a firearm enclosed in a flannel bag. *Id*. at 292:17–293:3. At the time the firearm was discovered, Petitioner was in the process of being removed from the room, but had not been removed yet. *Id*. at 299:14–17.

The record shows that "[a]lthough the [firearm] was contained in a [bag], it was nevertheless well within [Petitioner's] reach, and thus constituted a potential danger to the arresting officers." *Hudson*, 100 F.3d at 1420. The record also shows that the search was "roughly contemporaneous" with Petitioner's arrest. *See United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) ("the critical inquiry in such cases is whether the search is roughly contemporaneous with the arrest") (internal citations and quotation marks omitted). Based on the foregoing, the bag with the firearm was within Petitioner's immediate control. As the search was roughly contemporaneous with the arrest, nothing occurred after the arrest but before the search to make the search unreasonable. Therefore, the search of the bag was lawful.

**ii. Vehicle**

Here, the record shows that a marshal noticed a flannel cloth similar to the bag in which the firearm in the residence was found between the driver and front passenger seats of a Jeep Cherokee parked outside the residence. Trial Tr. 294:7–15, Aug. 13, 2008, ECF No. 153-2. The marshal contacted the Guam Police Department's Violent Street Crimes task force for assistance with the search of the vehicle. *Id*. at 294:17–23. A sergeant with the task force ran the Jeep's license plate through their system to find the registered owner. The sergeant placed a call to the person whose name was in the system, but she indicated that she sold the Jeep to her sister. Thereafter, the sergeant placed a call to the sister, who gave her verbal consent to the search of

the Jeep over the telephone. *Id.* at 315:8–23, ECF No. 153-3. The person who owned the Jeep and gave her consent to its search was in fact Petitioner's mother. *Id.* at 316:1–11.

The marshal who first saw the flannel cloth in the Jeep testified that the vehicle was locked and that he did not retrieve the cloth. *Id.* at 392:20–25, 395:11–19, ECF No. 153-4. The marshal gave the keys to a Guam Police Department ("GPD") officer, who unlocked the Jeep after confirming with the task force sergeant via telephone that the owner had given her consent to search the vehicle. Trial Tr. 446:23–448:22, Aug. 14, 2008, ECF No. 154.

There is no indication from the record that the Marshals searched the Jeep prior to speaking with Petitioner's mother. Rather, a marshal was able to view the cloth from outside, and only after obtaining consent from Petitioner's mother did the GPD officer unlock the vehicle and retrieve the cloth, which contained a magazine and nine unexpended 45-caliber bullets. Trial Tr. 326:15–19, Aug. 13, 2008, ECF No. 153-3.

"It is well settled that 'a search conducted pursuant to a valid consent is constitutionally permissible.'" *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2003) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). "Whether consent to search was voluntarily given is 'to be determined from the totality of all the circumstances.'" *Id.* (quoting *Schneckloth*, 412 U.S. at 222). The Ninth Circuit has identified five factors to be considered in determining whether consent was voluntarily given: "(1) whether the defendant was in custody; (2) whether the arresting officer had his guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told that a search warrant could be obtained." *United States v. Vongxay*, 594 F.3d 1111, 1119–20 (9th Cir. 2010) (citing *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002)). The Ninth Circuit has held:

> No one factor is determinative in the equation. It is not necessary to check off all five factors, but many of this court's decisions upholding consent as voluntary are supported

> by at least several of the factors. Nevertheless, these factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry.

*Patayan Soriano*, 361 F.3d at 502 (internal citations and quotation marks omitted).

Consideration of the factors supports a finding that Petitioner's mother voluntarily gave her consent to search the vehicle. First, regarding whether the person giving consent was in custody, Petitioner does not contend that his mother was either in custody or threatened with custody. Second, no officers had their guns drawn when Petitioner's mother was asked for consent as she gave her consent over the telephone. Third, *Miranda* warnings are inapposite here as Petitioner's mother was not in custody. *See United States v. Ritter*, 752 F.2d 435, 438 (9th Cir. 1985) ("It would…make little sense to require that *Miranda* warnings, which advise one of the right to remain silent and the right to counsel, be given by police before requesting consent."). Fourth, regarding notice of the right not to consent, the record is void of any information indicating whether the task force sergeant informed Petitioner's mother that she had the right not to consent to the search of the Jeep. Fifth, the record is void of information indicating whether Petitioner's mother was informed that a search warrant could be obtained.

Of the five factors, three support a finding that Petitioner's mother voluntarily gave her consent to search the vehicle. As discussed above, the factors are guideposts rather than a checklist of requirements to be satisfied. Given the totality of the circumstances, the record establishes that Petitioner's mother voluntarily consented to the search of the vehicle. Moreover, even if Petitioner's mother did not consent to the search of the vehicle, Petitioner suffered no prejudice as he was acquitted of the charge arising from the ammunition retrieved from the Jeep.

The entry into the residence to effectuate Petitioner's arrest was lawful. The search of the bag laying beside Petitioner in the bedroom was a lawful search incident to arrest. The search of the vehicle was a lawful search pursuant to the vehicle owner's consent. In light of the Supreme Court's directive that "a heavy measure of deference to counsel's judgments" must be applied

and given this quantum of evidence, defense counsel's failure to further investigate the circumstances of the entry and search of April 11, 2007 and decision not to call Petitioner's uncle, brother, and mother as witnesses does not fall below an objective standard of reasonableness. Accordingly, this claim is denied.

### 2. Failure to Move to Suppress or Otherwise Challenge Evidence That Was the Product of Alleged Unlawful Entry and Search

Additionally, Petitioner contends that because counsel failed to conduct the necessary pretrial investigations, she also failed to file suppression motions with respect to the alleged unlawfully obtained evidence from the residence and vehicle at the time of Petitioner's arrest. Pet'r's Mem. at 12, ECF No. 162.

The Supreme Court has noted that "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Rather, Petitioner must show that counsel's failure to file a suppression motion "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Ninth Circuit has held that "it is not professionally unreasonable to decide not to file a motion so clearly lacking in merit." *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).

As discussed above, the entry into the residence was lawful as were the searches of the bag containing the firearm and the vehicle where the ammunition was discovered. Consequently, it would not have been unreasonable for counsel to refrain from filing motions to suppress evidence that was lawfully acquired. Thus, this claim is denied.

### 3. Failure to Challenge Joinder of Counts

Petitioner contends that he suffered ineffective assistance when counsel did not challenge the joinder of offenses. He argues that Counts I and II were improperly joined with Counts III and IV under Federal Rule of Criminal Procedure 8(a). Alternatively, he argues that even though

joinder was proper under Rule 8(a), counsel should have moved to sever the counts pursuant to Rule 14 because such joinder was prejudicial. Pet'r's Mem. at 13, ECF No. 162.

Rule 8(a) of the Federal Rules of Criminal Procedure provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

FED. R. CRIM. P. 8(a). Under Rule 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may separate trials for counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a).

Here, joinder of the charges arising from events on two separate occasions was based upon the fact that the charged offenses "are of the same or similar character." FED. R. CRIM. P. 8(a). The Ninth Circuit has upheld joinder of two counts of being a felon in possession of a firearm. *See United States v. Rousseau*, 257 F.3d 925, 932 (9th Cir. 2001). Therefore, joinder of the offenses was proper under Rule 8(a). Moreover, Petitioner's claim that such joinder was prejudicial has no merit. The fact that Petitioner was acquitted of three of the four counts demonstrates that the jury was able to compartmentalize the evidence for the events occurring on January 4, 2006 from the evidence for April 11, 2007. *See United States v. Sullivan*, 522 F.3d 967, 981–82 (9th Cir. 2008) ("the best evidence of the jury's ability to compartmentalize the evidence is its failure to convict all defendants on all counts") (quoting *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993)).

As joinder of the offenses was appropriate under Rule 8(a) and Petitioner did not suffer prejudice from such joinder, defense counsel's failure to challenge joinder did not fall below an objective standard of reasonableness. Accordingly, this claim is denied.

### 4. Trial Stipulations

Petitioner asserts that counsel rendered ineffective assistance when she stipulated to two of the elements for the crime of Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1). Pet'r's Mem. at 13, ECF No. 162. In order to find a defendant guilty of said offense, the government must prove beyond a reasonable doubt:

> First, the defendant knowingly possessed the specific firearm;
>
> Second, the firearm had been transported from one state to another; and
>
> Third, at the time defendant possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

Ninth Circuit Model Criminal Jury Instruction 8.65 (2010).

Counsel stipulated to the second and third elements—interstate transportation and prior conviction of a felony. Regarding the second element, defense counsel stipulated that the gun from the April 11, 2007 incident traveled in interstate commerce. *See* Trial Tr. 459:16–465:1, Aug. 14, 2008, ECF No. 154. As the Government's expert witness had already testified with respect to the gun from the January 4, 2006 incident and interstate commerce, defense counsel informed the court that "we know what he's going to say is this gun is in interstate commerce, and we don't have a good faith basis for prolonging it." *Id*. at 460:10–12.

With respect to the third element:

> In general, in a § 922(g)(1) prosecution, the government is entitled to introduce evidence of a prior felony conviction unless the defendant offers to stipulate to his status as a felon. Because, however, of the *prejudicial nature of evidence of prior criminal history*, a district court must take great care to limit the evidence of previous convictions and to avoid unnecessary prejudice to the defendant.

*United States v. Weiland*, 420 F.3d 1062, 1078 (9th Cir. 2005) (emphasis added) (internal citations omitted).

By stipulating to the second element, counsel prevented prolonging the trial by not requiring the Government to recall a witness to produce identical testimony for the second gun.

By stipulating to the third element, counsel prevented prejudicial evidence regarding Petitioner's prior conviction from being introduced at trial, preserved the court's time, and avoided unnecessary testimony of foundational witnesses. *See* Stipulation, ECF No. 91.

The Supreme Court has noted that in cases "in which the prior conviction is for an offense likely to support conviction on some improper ground…it was an abuse of discretion to admit the record when an admission was available. What we have said shows why this will be the general rule when proof of convict status is at issue[.]" *Old Chief v. United States*, 518 U.S. 172, 191–92 (1997). Petitioner has failed to demonstrate how counsel's strategic use of stipulations to prevent such prejudicial evidence from being introduced at trial fell below an objective standard of reasonableness.

Moreover, counsel's stipulation affected both Counts I and III, but Petitioner was acquitted of Count I. This further demonstrates that counsel's strategic use of stipulations did not prejudice Petitioner. Consequently, this claim is denied.

### 5. Conclusion

The court has found that counsel's conduct was not deficient with respect to the failure to further investigate and failure to move to suppress or otherwise challenge the evidence obtained on April 11, 2007, the failure to challenge the joinder of the charges, and trial stipulations. Even assuming counsel's conduct with respect to the search of the vehicle, joinder, and stipulations were deficient, Petitioner has not satisfied the second *Strickland* prong—that such deficiency prejudiced his defense—given that he was acquitted of three of the four counts. Therefore, Petitioner's claim of ineffective assistance of counsel is **DENIED**.

### D. EVIDENTIARY HEARING

The court should grant a request for an evidentiary hearing in a § 2255 proceeding "unless the motion and the files and records of the case conclusively show that the prisoner is

entitled to no relief." 28 U.S.C. § 2255(b). The Supreme Court has held that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (in context of habeas petition). *See* Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, 28 U.S.C. foll. § 2255 advisory committee's note ("The standards for § 2255 hearings are essentially the same as for evidentiary hearings under a habeas petition[.]"). As discussed above, the record refutes Petitioner's factual allegations and precludes relief. Accordingly, an evidentiary hearing is **DENIED**.

### E. APPOINTMENT OF COUNSEL

The court has discretion to appoint counsel in § 2255 proceedings when "the interests of justice so require and [the prisoner] is financially unable to obtain representation." *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987) (citing 18 U.S.C. § 3006A(g)). "In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). As Petitioner is not entitled to relief, Petitioner's request for appointment of counsel is **DENIED**.

## III. CONCLUSION

Based upon the foregoing, the court hereby **DENIES** the Motion to Vacate, Set Aside, or Correct Sentence in all respects.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Feb 24, 2014**